**Mary P. LAFFEY et al., Plaintiffs,**

v.

**NORTHWEST AIRLINES, INC., Defendant.**

**Civ. A. No. 2111–70.**

United States District Court, District of Columbia.

July 9, 1979.

Michael H. Gottesman, Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C., for plaintiffs.

Philip A. Lacovara, Jay Kelly Wright, Hughes, Hubbard & Reed, Donald J. Capuano, O'Donoghue & O'Donoghue, A. Andrew Giangreco, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

With respect to the Title VII backpay recovery period, this Court has been directed to do two things: first, determine the local statute of limitations most appropriate to this case and thus determine "the outermost limit on awards of Title VII backpay," *Laffey v. Northwest Airlines, Inc.,* 185 U.S. App.D.C. 322, 362, 567 F.2d 429, 469 (D.C.

Cir.1976), and second, "reconsider, in light of *Albermarle* and this opinion, the need to limit the backpay remedy here." *Id.,* 185 U.S.App.D.C. at 364, 567 F.2d at 471.

■ As recently as last year, the D.C. Circuit in *Forrestal Village, Inc. v. Graham,* 179 U.S.App.D.C. 225, 227, 551 F.2d 411, 413 (D.C.Cir.1977), declared:

> It is well established that when, as here, Congress has created a federal right but has not prescribed a limitation period for enforcement, federal courts will borrow the period of limitation prescribed by the state where the court sits (citations omitted). . . . that "best effectuates the federal policy involved."

This is consistent with the principle announced by the Supreme Court in *Cope v. Anderson,* 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947).

The District of Columbia has no borrowing statute and follows the common law that a statute of limitations is procedural. 2 J. Moore, *Federal Practice* ¶ 3.07[3] (2nd ed. 1948). This is evidenced by the consistent rulings of the United States Court of Appeals prior to 1971 when it was the "highest state Court" and has been reaffirmed by the District of Columbia Court of Appeals. The same conclusion was reached by Judge Richey in his analysis of the law in *Monatee Cablevision Corp. v. Pierson,* 433 F.Supp. 571 (D.D.C.1977).

It is the settled law in this circuit that when, as in a Title VII case, the action is considered purely legal or one in which the Court has concurrent jurisdiction in law and equity, the District of Columbia statute of limitations applies. *Cassell v. Taylor,* 100 U.S.App.D.C. 153, 243 F.2d 259 (D.C.Cir. 1957). This Court is without authority or precedent to consider the statute of limitations of some other state to fashion a federal common law period of limitation. As stated by the Court in *Laffey, supra,* 185 U.S.App.D.C. at 361, 467 F.2d at 468:

> Most often this is effected by adopting the period prescribed by the most analogous state statute. Because of its convenience, and of the notice it presumably affords prospective litigants, adoption of

the state limitation period is proscribed only when it would create important conflicts with the federal policy underlying the cause of action, or when it would amount to discriminatory restriction of a federal right of action. *Neither of those conditions exists here.* (emphasis added).

A search of the statutes of the District of Columbia reveals only two which can be considered relevant in determining which limitation period is most appropriate for this case: (1) the D.C. Minimum Wage Law, · which prescribes a three-year limitations period for all actions "to enforce any cause of action for unpaid wages or liquidated damages under this subchapter," D.C.Code § 36–416, and (2) the general statute of limitations, D.C.Code § 12–301, which provides as follows:

§ 12–301. *Limitation of time for bringing actions*

Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

.        .        .        .        .

(8) for which a limitation is not otherwise specially prescribed—3 years.

The District of Columbia Minimum Wage Law, as originally enacted in 1918, provided:

This subchapter shall be known as the "District of Columbia Minimum-Wage Law." The purposes of the subchapter are to protect the women and minors of the District from conditions detrimental to their health and morals, resulting from wages which are inadequate to maintain decent standards of living; and the subchapter in each of its provisions and in its entirety shall be interpreted to effectuate these purposes.

D.C.Code § 36–401, Sept. 19, 1918, ch. 174, Title I, § 23, 40 Stat. 964. The statute provided that any woman worker paid less than the minimum wage by her employer could bring suit to recover the full amount of the minimum wage less any amount paid to her and reasonable attorneys fees. In 1966, Congress revised this statute to include men and modeled its provisions after the Fair Labor Standards Act. Its enforcement provision, D.C.Code § 36–415, tracks the enforcement provisions of the FLSA, 29 U.S.C. §§ 216(b), 256, 260, and further provides a three year limit for suits for unpaid wages or liquidated damages. D.C.Code § 36–416.

Congress has made equal pay discrimination an FLSA and a Title VII violation. Since the two statutes are to be construed *in pari materia, Laffey, supra,* 185 U.S.App. D.C. at 359, 567 F.2d at 466, D.C.Code § 36–416 may be considered "most analogous" for the purposes of the inquiry in this action.

Absent a D.C. statute sufficiently analogous to justify selection, a three year limitation period would still result. The D.C. Code provides a three year limitation on actions for which other specific limitations have not been specified. D.C.Code § 12–301(8). *Cassell,* in construing this provision in its earlier code form, held it to be sufficiently broad to include enforcement of federally created rights. *Cassell, supra,* 100 U.S.App.D.C. at 154 n. 3, 243 F.2d at 260 n. 3. This statute also leads to a three year period of limitation.

■ The Court in *Laffey* has determined that there is discretionary power to limit as well as deny backpay in Title VII actions. With respect to this power to limit backpay, the Court declared:

Nevertheless, the power to limit backpay is subject to restraints. As a partial denial of backpay, authority to limit must be as narrowly constrained as authority to totally deny; its exercise, therefore, must be supported by reasons faithful to the dual purpose attributed to the backpay remedy by the *Albemarle* Court. Firstly, a "reasonably certain prospect of a backpay award 'provide[s] the spur or catalyst which causes employers and unions to self-examine and self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of an unfortunate and igno-

minious page in this country's history'". Secondly, backpay "make[s] persons whole for injuries suffered on account of unlawful employment discrimination."

*Laffey, supra*, 185 U.S.App.D.C. at 364, 567 F.2d at 471.

Defendant has advanced three arguments for a limitation of backpay. First, since wages were not equalized until January 1976, the millions of dollars involved will be more than sufficient to deter future violations, regardless of the limitation period ultimately applied by the Court. Second, stewardesses must be prevented from receiving more than that to which they are entitled in order to be made whole. Third, Plaintiffs slept on their rights by not filing this action sooner. An examination of these reasons leads this Court to conclude that they are without merit when measured by the standards of *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

With respect to the size of the award, it is nowhere suggested in *Albemarle* that this is a factor to be considered by the Court in limiting the amount of the backpay award. Within the outer limits set by the applicable statute of limitations, plaintiffs who have been found to be victims of sex discrimination are entitled to that amount of backpay which will make them whole. A "reasonably certain prospect of a backpay award . . . 'provide[s] the spur or catalyst which causes employers and unions to self-examine and self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of an unfortunate and ignominious page in this Country's history.'" *Albemarle, supra*, at 417–18, 95 S.Ct. at 2371–2372. The size of the backpay claim relates directly to the massive wrong it inflicted upon the Plaintiffs. If wrongs may remain uncompensated because they are expensive to the wrongdoer, it would violate the instruction of *Albemarle* that "backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making per-

sons whole for injuries suffered through past discrimination." *Albemarle, supra*, at 421, 95 S.Ct. at 2373.

Northwest's reliance upon *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), as authority for reducing the backpay award here is misplaced. Backpay in *Manhart* was denied because of the disastrous effect it would have on the employees' pension fund whose assets were earmarked solely for the benefit of the employees. In effect, the Court in *Manhart* prevented innocent employees from shouldering a substantial financial burden imposed upon their retirement system by a wrongdoing defendant. The limitation was necessary to protect them by not jeopardizing the solvency of pension plans from which they anticipated benefits.

Northwest's second argument is totally without merit. This Court's findings of Title VII and Equal Pay Act wage discrimination against female cabin attendants have been affirmed. "Equalization upward" to the rate of pay for males is the remedy prescribed in the Equal Pay Act, and is the remedy under Title VII as well as where the statutes overlap. *Corning Glass Works v. Brennan*, 417 U.S. 188, 206–207, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

*Albemarle* presented the Court with considerations involving backpay claims that are readily distinguishable from those here involved. From the inception of this litigation, Plaintiffs herein vigorously demanded backpay for the discriminatory wages paid to female cabin attendants. At no time were their backpay claims waived or abandoned. Their position remains clear and unchanged.

In *Albemarle*, the Plaintiffs initially disclaimed any interest in backpay, and first asserted their backpay claim five years after the complaint was filed. Because the employer claimed "prejudice" by this course of conduct, the Court ruled that the peculiar facts of that case might entitle the District Court to deny backpay, saying:

[A] party may not be "entitled" to relief if its conduct of the cause has improperly

and substantially prejudiced the other party. The [plaintiffs] here were not merely tardy, but also inconsistent, in demanding backpay. To deny backpay because a *particular* cause has been prosecuted in an eccentric fashion, prejudicial to the other party, does not offend the broad purposes of Title VII. This is not to say, however, that the District Court's ruling was necessarily correct. Whether the [defendants] were in fact prejudiced, and whether the [plaintiffs'] trial conduct was excusable, are questions that will be open [*following remand*] . . . . On these issues of procedural regularity and prejudice, the "broad aims of Title VII" provide no ready solution. (emphasis in original).

*Albemarle, supra*, 422 U.S. at 424–25, 95 S.Ct. at 2375.

Northwest does not and cannot claim prejudicial reliance on Plaintiffs' conduct in litigating their backpay claims. Defendant simply took the position that Plaintiffs' position lacked merit and that its own actions would ultimately be sustained. No one of Northwest's policies concerning wage differentials between male and female cabin attendants was changed one wit as a result of this litigation until after this Court's adjudication that they were discriminatory. Additionally, there was no delay by Plaintiffs here in filing their backpay claims; there was no "eccentricity" in prosecuting.

Accordingly, it is Decreed this 9th day of July, 1979, that:

1) The statute of limitations most appropriate to determine the Title VII backpay awards is three (3) years;

2) There are no circumstances in this case warranting the withholding of backpay for any portion of the limitation period;

3) The appropriate starting date for Title VII backpay herein is March 28, 1967, (three years prior to the filing of the first EEOC charge upon which this lawsuit is based), and that that date shall be used in implementing this Court's Order of April 3, 1974, instead of the dates specified in Paragraphs 6, 6(a), 6(b), 7(a), 7(b), 7(c), 10 and 11 of said Order.