**Richard C. BARTEL, Plaintiff,**

v.

**FEDERAL AVIATION ADMINISTRATION, et al., Defendants.**

**Richard C. BARTEL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Richard C. BARTEL, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. Nos. 82–0077, 82–2791 and 83–1250.**

United States District Court, District of Columbia.

April 18, 1985.

See also 24 MSPR 560.

John D. Bates, Asst. U.S. Atty., Washington, D.C., for Federal defendant; John Walsh, F.A.A., Washington, D.C., of counsel.

J.E. McNeil, McNeil & Ricks, George M. Chuzi, Kalijarvi, Delate & Chuzi, Washington, D.C., for plaintiff.

## MEMORANDUM OPINION

HAROLD H. GREENE, District Judge.

These three consolidated cases have their genesis in an investigation and subsequent disclosures by defendant Brian Vincent, a Federal Aviation Administration (FAA) supervisory official, to various individuals, to the effect that plaintiff, an FAA air safety inspector, had examined confidential personnel records of several fellow FAA air safety inspectors. Based on these disclosures, and on subsequent employment disputes,[1] plaintiff has sued Vincent and other officials, as well as the United States, asserting constitutional and common-law tort claims; claims under the Privacy Act, 5 U.S.C. § 552a; and claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[2]

Presently pending before the Court, on remand from the Court of Appeals,[3] are

---

1. In Civil Actions Nos. 82–0077 and 82–2791, plaintiff alleges that the FAA improperly inititiated disciplinary action against him and refused to hire him for an Atlanta, Georgia position. In Civil Action No. 83–1250, plaintiff alleges that the FAA improperly refused to hire him as a GS–13 Aviation Safety Inspector, instead hiring him for a GS–12, Step 2 position.

2. Plaintiff asserts the constitutional and common-law tort claims (for defamation and invasion of privacy), and the Privacy Act claim, in Civil Action No. 82–0077. Similar claims are asserted against the United States in Civil Action No. 82–2791, which also includes a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) et seq. Finally, in Civil Action No.

83–1250, plaintiff has asserted claims against the United States under Title VII and the FTCA.

3. Two of the cases, Civil Actions Nos. 82–0077 and 82–2791, were dismissed by this Court on November 30, 1982. On January 17, 1984, the Court of Appeals vacated the dismissal order and remanded the cases for further proceedings. *Bartel v. Federal Aviation Administration*, 725 F.2d 1403 (D.C.Cir.1984). While his appeal from the Court's dismissal order was pending, plaintiff initiated Civil Action No. 83–1250, which was consolidated with the remanded cases on June 8, 1984. The salient facts and allegations which form the basis for the claims in these cases are set forth in the Court of

three motions. In No. 82–0077, defendant Vincent has moved for dismissal or summary judgment with respect to the claims asserted against him in his individual capacity.[4] In No. 83–1250, all the defendants have moved for dismissal or summary judgment on the grounds that venue is lacking as to both plaintiff's Title VII employment discrimination and Federal Tort Claims Act (FTCA) claims, and that his tort claim is barred both by the FTCA and by the applicable statute of limitations. Plaintiff has cross-moved for summary judgment with respect to the Title VII claim. For the reasons stated below, plaintiff's motion will be denied, and defendants' motions will be granted.

## I

In No. 82–0077, plaintiff seeks damages from Vincent, in his personal capacity, for alleged violations of plaintiff's First, Fourth, Fifth, and Ninth Amendment rights,[5] and for common-law defamation.[6] None of these claims withstands analysis.

### A. First Amendment

The precise nature of plaintiff's First Amendment claim is unclear. His *pro se* complaint alleges generally that Vincent's disclosure of plaintiff's unauthorized examination of other employees' personnel files

violated his right to privacy guaranteed by the First Amendment.[7] On appeal, plaintiff more specifically argued that the violation occurred as a result of Vincent's investigation and subsequent disclosure of information which assertedly was done in retaliation for plaintiff's attempt "to bring a reverse discrimination E.E.O. complaint."[8] Now, in his opposition to Vincent's motion, plaintiff alleges for the first time that the First Amendment right involved is the right to seek information.[9] Although Vincent's expressed frustration with "the chameleon-like nature" of plaintiff's claims[10] is understandable, the Court is obligated to construe the allegations of the *pro se* complaint broadly,[11] and it will therefore consider each of the theories advanced by plaintiff.

1. To the extent that plaintiff's First Amendment claim asserts that defendant acted in retaliation for plaintiff's pursuit of a reverse discrimination E.E.O. complaint, it is precluded by the existence of a remedy under Title VII.[12] Both the Supreme Court and the Court of Appeals for this Circuit have held that Title VII provides the exclusive remedy for claims of discrimination in federal employment, and that a plaintiff may not circumvent the carefully crafted Title VII remedial scheme

---

Appeals opinion, *id.* at 1405–07, and will not be recited in detail here.

**4.** The constitutional damages claims against Vincent in his official capacity, and against the United States, have been held to be barred by sovereign immunity. *Bartel, supra,* 725 F.2d at 1414 n. 20.

**5.** Plaintiff can maintain this damage action against Vincent in his personal capacity under the theory elaborated in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and its progeny.

**6.** Because most, if not all, of the operative facts alleged in the complaint are common both to plaintiff's constitutional claims and to his common-law tort claim, the Court may properly exercise pendant jurisdiction over the latter claim under the doctrine enunciated in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). See *Bartel, supra,* 725 F.2d at 1405 n. 2.

**7.** Complaint at 8, ¶¶ 47–49.

**8.** Appellant's Brief at 21. See *Bartel,* 725 F.2d at 1406 and note 3.

**9.** Opposition at 2.

**10.** Reply at 4.

**11.** Although plaintiff is, as noted, presently represented by counsel, his complaint was filed *pro se,* and it is therefore appropriate to construe the allegations in the complaint liberally. See *Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982).

**12.** 42 U.S.C. §§ 2000e–3, 2000e–16. See, *e.g., White v. General Services Administration,* 652 F.2d 913 (9th Cir.1981). Indeed, plaintiff's implicit recognition of this rule is reflected in his latest complaint, which for the first time does assert a Title VII claim. See the complaint in No. 83–1250.

by challenging alleged constitutional violations through conduct which is also proscribed under the statute. *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976); *Kizas v. Webster*, 707 F.2d 524, 542 (D.C.Cir.1983); *Davis v. Califano*, 613 F.2d 957, 958 n. 1 (D.C.Cir.1979).[13] Accordingly, the Court holds that plaintiff has failed to state a cognizable First Amendment claim with respect to the alleged retaliation. See also *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

■ 2. As noted, plaintiff's First Amendment claim can also be read more broadly as an assertion that Vincent's investigation order and subsequent disclosure of information violated plaintiff's right to privacy as guaranteed in the First, Fourth, Fifth, and Ninth Amendments. However, the Supreme Court has foreclosed such a broad reading of constitutional privacy rights. See *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), which explicitly refused to extend the privacy right recognized by the Court as emanating from the penumbras of the First, Fourth, Fifth, and Ninth Amendments to permit the implication of a *Bivens* remedy for government officials' publication of derogatory information concerning an individual. *Id.* at 713, 96 S.Ct. at 1166. To the extent that plaintiff asserts such claims, they are more properly considered under the rubric of the Due Process Clause of the Fifth Amendment (*Paul, supra; Doe v. U.S. Department of Justice*, 753 F.2d 1092 (D.C.Cir.1985)) and they will so be considered.[14]

3. Plaintiff's final characterization of his First Amendment claim is that Vincent infringed his right, as a private citizen, to seek and obtain publicly available information. On this theory, Vincent's initiation of an investigation of plaintiff for possible Privacy Act violations, and his publication and criticism of plaintiff's examination of records infringed plaintiff's First Amendment right to receive information. This theory, too, cannot be sustained, for several reasons.

■ Even assuming *arguendo* that plaintiff sought the information not in his official capacity but rather as a private citizen,[15] he still has not stated a First Amendment violation. Although the First Amendment protects the right to seek and to receive information from a willing speaker,[16] it does not grant a general right to information within the government's control.[17] Here the information sought concededly was not publicly available,[18] and

---

**13.** This Court also has previously concluded that there is no warrant for implying a *Bivens*-type First Amendment damage action where, as here, plaintiff's conduct was also protected under Title VII. *Neely v. Blumenthal*, 458 F.Supp. 945, 956–60 (D.D.C.1978).

**14.** The narrowness of the Court's ruling in dismissing this portion of plaintiff's claim should be emphasized. Specifically, the Court does not hold that plaintiff has no privacy interest in his records. Cf. *Doe v. Webster*, 606 F.2d 1226, 1238 (D.C.Cir.1979). Nor, of course, does it hold that a First Amendment *Bivens* claim may never be implicated in a case of this type. Cf. *Doe v. U.S. Civil Service Commission*, 483 F.Supp. 539, 564 (S.D.N.Y.1980). The Court holds only that where, as here, a federal employee alleges that derogatory information concerning him was wrongfully disseminated, he states a claim, if he does so at all, under the Fifth Amendment, not under the First, Fourth, and Ninth Amendments.

**15.** See Plaintiff's Statement of Material Facts in Issue. Without disputing plaintiff's subjective intent, the Court feels compelled to observe that the documentary evidence produced to date tends to belie this assertion—or at least to suggest that plaintiff was relying on his official status in obtaining the personnel records. Plaintiff had the records sent to his government office. Deft.Ex. A. He returned them using a government buck slip. Deft.Ex. B. It is thus clear that, whatever may have been his subjective intent, plaintiff used means that would typically be used by an FAA official, not by a private citizen.

**16.** See *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Paton v. LaPrade*, 524 F.2d 862 (3d Cir.1975).

**17.** *Houchins v. KQED, Inc.*, 438 U.S. 1, 14, 98 S.Ct. 2588, 2596, 57 L.Ed.2d 553 (1977).

**18.** Plaintiff apparently does not dispute that the information he sought was in fact protected under the Privacy Act.

plaintiff therefore cannot plausibly claim that he possessed a First Amendment right to receive it. There is, accordingly, no warrant whatever for the implication by the Court of a First Amendment *Bivens* remedy.[19]

To the extent that plaintiff is asserting that Vincent's actions violated a First Amendment right to seek government information, his claim is precluded under *Bush v. Lucas, supra,* where the Supreme Court held that the existence of a comprehensive personnel scheme that could afford substantial relief to a government employee assertedly discharged or disciplined in violation of his constitutional rights was a special factor counselling hesitation in the creation of an additional, independent *Bivens* remedy. 103 S.Ct. at 2416–17. Since Bartel could, as he apparently did,[20] recover for the agency's wrongful refusal to hire him at the GS–13 level through the available Merit Systems Protection Board mechanism, *Bush* clearly precludes the implication of a *Bivens* remedy for the FAA's failure to rehire Bartel at the GS–13 level.[21]

In short, plaintiff has failed to state a valid First Amendment *Bivens* claim against Vincent, and the Court will therefore dismiss that claim.

### B. Fifth Amendment

Plaintiff also asserts *Bivens* claims against Vincent under the Due Process Clause of the Fifth Amendment. In particular, he asserts that Vincent's publication of defamatory information through letters and telephone calls to prospective employers deprived him of a constitutionally-protected liberty interest.[22]

■ To establish that the government has deprived him of such an interest a plaintiff must "demonstrate that the government's defamation resulted in a harm to some interest beyond reputation." *Doe v. Department of Justice, supra,* 753 F.2d at 1111; see also *Paul v. Davis, supra; Bartel, supra; Mosrie v. Barry,* 718 F.2d 1151, 1162 (D.C.Cir.1983). Loss of future or present government employment satisfies that required additional interest. *Id.* Here, Bartel has alleged that Vincent's actions defamed him and resulted in the denial of his right to consideration for re-employment at the GS–13 position on an equal basis with others of equivalent skill and experience. See *Bartel,* 725 F.2d at 1415. Thus, taking his allegations as true, he has identified a cognizable liberty interest the denial of which would constitute a due process violation.[23]

19. Moreover, were the Court to find Vincent's actions to constitute a First Amendment violation, he clearly would enjoy qualified immunity against plaintiff's claims since he was performing discretionary functions, see text, *infra,* and since this newly recognized right would not have been clearly established at the time Vincent assertedly violated it. See *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

20. See Civil Action No. 83–1250; Defendant Ex. B (January 12, 1985 Order granting Bartel retroactive promotion to GS–13 level pursuant to order of Merit Systems Protection Board).

21. If it is plaintiff's allegation that Vincent's actions resulted in the denial of private employment opportunities, the Court of Appeals has held that such an alleged injury does not establish a Fifth Amendment *Bivens* claim under *Paul v. Davis.* See *Bartel,* 725 F.2d at 1415–16.

22. As noted above, the Court of Appeals has rejected plaintiff's claim that the telephone calls and other contacts which assertedly resulted in

the denial of employment by a private employer infringed a protected liberty interest and plaintiff's due process rights. *Bartel,* 725 F.2d at 1415–16. However, the court concluded that, to the extent that plaintiff alleged that Vincent's letter accusing him of Privacy Act violations had resulted in his not being considered on an equal basis with other applicants for a GS–13 position, he might state a cognizable liberty interest the denial of which without due process would violate the Fifth Amendment. *Id.* at 1415. Accordingly, the court remanded plaintiff's Fifth Amendment claim for consideration by this Court, which was to determine whether plaintiff has stated a cognizable liberty interest; if so, whether he received his procedural due; and which, if any, of plaintiff's due process claims survive the Supreme Court's holding in *Bush v. Lucas, supra. Id.* at 1415 and note 21.

23. However, the mere placement of a letter in Bartel's personnel file does not, standing alone, appear to constitute a denial of Bartel's liberty interest in the absence of any additional disciplinary action, *e.g.,* discharge or demotion.

That does not end the inquiry, however, for a *Bivens* remedy is not available with respect to such a violation. See *Bush v. Lucas, supra,* 103 S.Ct. at 2416–17. As noted above, plaintiff has apparently recovered for the denial of this liberty interest through the Merit Systems Protection Board mechanism,[24] and he has not identified any violation stemming from the denial of this interest that was not remedied by the MSPB decision. Where, as here, plaintiff obtained a substantially adequate remedy through the comprehensive federal personnel scheme, *Bush* precludes the implication of an additional *Bivens* Fifth Amendment remedy. *Bush,* 103 S.Ct. at 2416–17. Accordingly, plaintiff's Fifth Amendment claim must also be dismissed.

### C. Defamation

Plaintiff has also asserted a common-law defamation claim against Vincent. This claim must also be dismissed, however, for two reasons.

First, the District of Columbia limitation period for defamation claims, which must be applied in this case,[25] is one year from the date of publication. 4 D.C.Code Ann. § 12–301(4). The letters plaintiff alleges were defamatory were sent on January 10, 1980, and the latest of the allegedly defamatory telephone conversations occurred in April, 1980. The complaint in No. 82–0077 was filed on January 8, 1982, some eight months after the last possible date for filing within the statutory time period. Plaintiff's defamation claim is therefore time-barred and must be dismissed on that ground.[26]

Second, the defamation claim is also barred because Vincent is entitled to immunity against that claim. A federal official is absolutely immune from common law torts allegedly committed in his individual capacity if (1) the allegedly tortious action was committed within the outer perimeter of his line of duty, and (2) it was related to a discretionary rather than to a ministerial function. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Gray v. Bell,* 712 F.2d 490 (D.C.Cir.1983); *Sami v. United States,* 617 F.2d 755 (D.C.Cir.1979); *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 566 F.2d 289 (D.C.Cir.1977) (*en banc*).[27]

The uncontroverted affidavits of Vincent and of Joseph DelBalzo, the FAA Eastern Region Director to whom Division Chief Vincent reported, and the undisputed facts in the case establish beyond doubt that Vincent's actions were within the outer perimeter of his line of duty, if not directly within the scope of his authority. In sending letters informing three air safety inspectors that Bartel had violated their rights under the Privacy Act, Vincent acted upon the recommendation of FAA counsel.[28] Similarly, in discussing Bartel's problematic conduct with Bartel's potential employers, Vincent was discussing the conduct of one of the former employees for whose supervision he was responsible.

Vincent's communications likewise constituted the exercise of discretionary functions.[29] The undisputed facts establish

24. See *supra,* note 20.

25. See *Steorts v. American Airlines,* 647 F.2d 194 (D.C.Cir.1981); *Laffey v. Northwest Airlines, Inc.,* 481 F.Supp. 199, 200 (D.D.C.1979).

26. The statute of limitations bar also requires the dismissal of plaintiff's First and Fifth Amendment claims, which essentially are constitutional defamation claims and are therefore governed by the one-year defamation time limit. See *Doe v. Department of Justice,* 753 F.2d at 1114–15.

27. Actions within the outer perimeter of an official's line of duty have been defined as those actions not manifestly or palpably beyond his authority, but rather more or less connected with the general matters committed to his control or supervision. See *Briggs v. Goodwin,* 569 F.2d 10, 16 (D.C.Cir.1977).

28. *Bartel,* 725 F.2d at 1406.

29. Discretionary functions have been defined as those in which a government official determines what action to take based on an individual, case-by-case analysis and in which his decision includes elements of judgment and discretion. *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Gray v. Bell, supra; Beins v. United States,* 695 F.2d 591 (D.C.Cir. 1982).

that these communications occurred only after, and indeed upon the recommendation of, other federal officials and counsel.[30] Such actions clearly reflect the individualized consideration and deliberation that is the essence of discretionary decisionmaking. Plaintiff's defamation claim must therefore also be dismissed.

## II

In No. 83–1250, defendants have moved for dismissal or summary judgment on the grounds that venue is lacking and that plaintiff's Federal Tort Claims Act claim is barred both by the FTCA and by the applicable statute of limitations. Plaintiff has cross-moved for summary judgment with respect to his Title VII claim. Because venue is lacking as to both of the claims in No. 83–1250, defendants' motion will be granted and these claims, too, will be dismissed.

### A. Venue Generally

■■■■ The Court's June 6, 1984 Order consolidating No. 83–1250 with plaintiff's other two pending cases in no way precludes a challenge to the claims therein on the ground that venue is lacking. The traditional rule regarding venue is that venue must be appropriate for each claim. See, e.g., *International Patent Development Corp. v. Wyomont Partners*, 489 F.Supp. 226, 230 (D.Nev.1980); see generally, 15 Wright, Miller & Cooper, *Federal Practice and Procedure:* Civil § 3808 at 42.[31] Moreover, the consolidation of civil cases does not result in a merger of the cases in which they lose their separate

---

**30.** *Bartel,* 725 F.2d at 1406.

**31.** It is also true that there has been considerable erosion of the traditional rule, and that the federal courts have become increasingly willing to recognize the developing doctrine of "pendent venue." See, *e.g., Beattie v. United States,* 756 F.2d 91, 100–03 (D.C.Cir.1984). Under this theory, federal courts may exercise their discretion to hear claims as to which venue as lacking if those claims arise out of a common nucleus of operative fact with claims as to which venue is proper. *Id.* at 102. The touchstones in the pendent venue analysis are judicial economy, convenience and fairness. *Id.* As discussed *infra,* however, the Court concludes that it would

identities for all purposes. *See* 9 Wright, Miller & Kane, *supra,* Civil § 2382 at 254. Indeed, it could not: Rule 82, Fed.R.Civ.P. explicitly provides that the Federal Rules of Civil Procedure (including, of course, Rule 42(a), which permits the consolidation of cases) "shall not be construed to extend ... the jurisdiction of the United States district courts *or the venue of actions therein."* Fed.R.Civ.P. 82 (emphasis added). Thus, the consolidation of these cases cannot have cured any venue defects in No. 83–1250, and the Court must determine whether venue lies in this district for the claims asserted in that action.

### B. The Title VII Claim

■■■ The special venue provision governing Title VII actions provides that such actions may be brought in one of three districts: (1) that in which the unlawful employment practice is alleged to have been committed; (2) that in which the employment records relevant to the practice are maintained or administered; or (3) that in which the plaintiff would have worked but for the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(f). The special venue provision reflects the clear "intent of Congress to limit venue to the judicial districts concerned with the alleged discrimination." *Stebbins v. State Farm Mutual Insurance Co.,* 413 F.2d 1100, 1102 (D.C.Cir.1969). An examination of the record in this case reflects that plaintiff has failed to establish venue in this district on any of the available statutory grounds.[32]

---

be inappropriate to exercise pendent venue with respect to either the Title VII claim, see *infra* note 32, or the FTCA claim. See *infra* note 38.

**32.** The appropriate inquiry is, of course, whether plaintiff satisfies the requirements of the special Title VII venue statute; it is not, as plaintiff suggests, whether venue is appropriate under 28 U.S.C. § 1402, the general venue statute applicable in cases involving the government as a defendant. In any event, plaintiff's reliance on the general venue statute is unavailing, since venue is inappropriate under that statute as well. See text, *infra,* at 198–199.

None of the acts allegedly violative of Title VII was committed in the District of Columbia. Vincent's alleged retaliation against plaintiff for filing his "reverse discrimination" complaint occurred either in Philadelphia, the location of the FAA office at which plaintiff was employed, or in New York City, where Vincent's office is located. Similarly, the discrimination allegedly resulting from Vincent's letters and telephone calls occurred either in New York City, or in the Atlanta, Georgia, or Northern Virginia or Richmond, Virginia, FAA offices. The complaint alleges no discriminatory acts occurring in the District of Columbia. Accordingly, plaintiff cannot establish that this is the proper venue for his Title VII claim under the first prong of the special venue provision.

Nor can venue be established under the second, records location prong of the venue statute. The uncontradicted declaration of Lionel Driscoll, Director of the FAA's Personnel Management Operations Division, establishes that the personnel records of FAA Eastern Region employees such as plaintiff are maintained and administered at the Regional Headquarters at JFK International Airport in New York City. Since plaintiff's personnel papers concerning his employment in Philadelphia and applications for employment in Atlanta and in Richmond are not maintained in Washington, D.C., he cannot establish this as a proper venue on the grounds that the relevant records are maintained and administered here.

Finally, since this is not the judicial district in which plaintiff would have worked but for the allegedly discriminatory personnel practices, venue in this district is inappropriate under the third prong of the Title VII venue statute.[33]

The Court must consider next whether, pursuant to 28 U.S.C. § 1406, it should dismiss the claim or transfer it, in the interests of justice, to another district in which it might have been brought. Based on the allegations in the complaint, it appears that venue under this provision might be appropriate in Philadelphia, where plaintiff initially was employed by the FAA and allegedly was constructively discharged; in Atlanta, where plaintiff applied for and was denied another FAA position; or in Richmond, Virginia, where plaintiff was denied a GS–13 position (although he ultimately accepted a GS–12 position). Since several other districts may be proper venues for the assertion of plaintiff's Title VII claim, it is appropriate that the Court afford plaintiff the initial choice as to which of the available forums is the most appropriate one in which to litigate his claim.[34] The Court will therefore dismiss plaintiff's Title VII claim.

### C. The FTCA Claim

■ Venue as to plaintiff's Federal Tort Claims Act claim is governed by 28 U.S.C. § 1402(b), the general venue statute governing suits in which the United States is a defendant. See *Misko v. United States*, 77 F.R.D. 425, 429 n. 7 (D.Colo. 1978); see generally, 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Civil* §§ 3814–15 (1976 and Supp.). The statute provides that venue in civil tort suits against the United States may be brought "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b).

*Howard*, 427 U.S. 1, 14–19, 96 S.Ct. 2413, 2420–22, 49 L.Ed.2d 276 (1976).

**33.** Although the Court has considered whether it should respect plaintiff's present forum choice and exercise pendent venue over his Title VII claim, it has concluded that it would be inappropriate to do so. In enacting the special Title VII venue statute Congress deliberately sought to limit the venues in which Title VII actions might be brought. See *Stebbins, supra.* Under such circumstances, the Court lacks the authority to ignore the congressional intent to limit venue by finding pendent venue. Cf. *Aldinger v.*

**34.** Moreover, it appears from the papers submitted by the parties that most, if not all, of plaintiff's Title VII claims have been resolved at the administrative level. It therefore appears that the most prudent course, which would both permit plaintiff to exercise his right of forum choice and conserve scarce judicial resources, is to dismiss plaintiff's Title VII claim.

Neither of those conditions is satisfied in this case. The pleadings indicate that plaintiff is a resident of Maryland, not of the District of Columbia.[35] And, as explained previously, none of the alleged tortious acts occurred in the District of Columbia. Accordingly, there is no statutory basis for finding venue in this District as to the plaintiff's FTCA claim. His assertions that jurisdiction of the action lies in the District of Columbia, and that the FAA has its principal office in the District, are correct, but they are entirely irrelevant to the statutory tests involved, and they obviously cannot constitute a basis for concluding that venue is appropriate in this District.[36]

As with plaintiff's Title VII claim, venue as to this claim appears to be appropriate in more than one district: plaintiff could presumably bring this action either in Maryland, where he currently resides, or in the Eastern District of Virginia, where the alleged torts occurred. Moreover, there is a significant question whether plaintiff states a valid FTCA claim.[37] Under these circumstances, the appropriate course is to dismiss with respect to the FTCA claim as well, and the Court will do so.[38]

### III

For the reasons stated, the Court will dismiss plaintiff's claims against defendant Vincent in his individual capacity in No. 82–0077; it will dismiss the complaint in No. 83–1250; and it will schedule a prompt status call so that the remaining claims in these consolidated cases may be speedily resolved.

**35.** Plaintiff's allegation that he was a resident of the District of Columbia at the time the allegedly tortious acts occurred does not provide a basis for determining that venue exists under the statute. The traditional rule for determining venue in diversity actions is that venue is determined by the parties' residence at the time the lawsuit is commenced. See generally, 15 Wright, Miller & Cooper, *Federal Practice and Procedure:* Civil § 3805. There is no reason to believe that Congress intended the residence test incorporated in both the federal defendant venue statute, 28 U.S.C. § 1402(b), and the diversity venue statute, 28 U.S.C. § 1391, to refer to a different point in time with respect to each statute.

**36.** Moreover, the Court notes that the cases cited by plaintiff in his brief all deal with the appropriateness of *transferring* a case to an appropriate venue, not to the initial determination whether venue is appropriate, and that they are therefore inapposite.

**37.** See Defendant's Brief at 3–8.

**38.** Pendent venue also appears to be inappropriate with respect to the FTCA claim. See *Reuber v. United States*, 750 F.2d 1039, 1048 (D.C.Cir. 1984) (FTCA creates strong negative presumption against finding pendent venue where not permitted under 28 U.S.C. § 1402(b) ); see also *Beattie, supra*, at 103 n. 82 (Discretionary exercise of pendent venue is appropriate in FTCA case where venue exists as to some FTCA claims, but inappropriate where venue is improper as to any FTCA claim).