**Frederick A. SIEGERT, Ph.D.**

v.

**H. Melvyn GILLEY, Ph.D., Appellant.**

**No. 88–5257.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 11, 1989.

Decided Feb. 9, 1990.

Rehearing and Rehearing En Banc Denied April 16, 1990.

John M. Facciola, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John D. Bates, R. Craig Lawrence, and Michael L. Martinez, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellant.

Nina Kraut, Washington, D.C., for appellee.

Before WALD, Chief Judge, and BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

Opinion dissenting in part filed by Chief Judge WALD.

BUCKLEY, Circuit Judge:

This appeal involves a suit by Dr. Frederick Siegert, a psychologist, against Dr. Melvyn Gilley, his one-time supervisor at a government hospital. Both are government employees. The complaint alleges that Gilley, in response to a request for information on job performance, wrote a letter defamatory of Siegert, causing him reputational harm and the loss of other government positions for which he had applied. Siegert further alleges that Gilley wrote the letter maliciously and in bad faith, thus depriving him of a constitutionally protected liberty interest without due process.

Defendant Gilley appeals an order of the district court denying his motion to dismiss or alternatively for summary judgment based on qualified immunity grounds. Because we find that Siegert's allegations do

not meet the heightened pleading standard established by our prior decisions for cases involving claims of immunity, we reverse the district court and remand with instructions to dismiss.

## I. BACKGROUND

Plaintiff Siegert was a psychologist employed by the federal government at St. Elizabeths Hospital in Washington, D.C. from November 1979 until October 1985 as a Behavior Therapy Coordinator specializing in work with mentally retarded children and, to a lesser extent, with adults. In January 1985, defendant Gilley became head of the division for which Siegert worked. The following month, Siegert was allegedly struck on the head by a patient. He claims he took a significant amount of medical leave as a result, although he was erroneously recorded as absent without leave.

St. Elizabeths notified Siegert in late August that it was preparing to terminate him. After a meeting with hospital officials, it was arranged that Siegert would resign from the hospital and thus avoid a termination that might damage his reputation. He had been planning a move in any event, he asserts, because he had experienced personal antagonism with Gilley. He had in fact already signed a 36-month contract to serve as a clinical psychologist at a U.S. Army medical facility in Bremerhaven, West Germany.

Siegert resigned from St. Elizabeths in October and took his position with the Army. Because of the requirement that he be "credentialed" to work in hospitals operated by the Army, Siegert signed a "Credential Information Request Form" asking that St. Elizabeths provide "all information on job performance and the privileges" he had enjoyed while a member of its staff to his prospective supervisor, Lt. (now Col.) William Smith. This request was referred to Gilley who, on October 23, 1985, wrote Smith that he considered Siegert to be inept, unethical, and one of the least trustworthy persons he had supervised during his thirteen years at St. Elizabeths.

Subsequently, Siegert was denied the credentials. He was also turned down for a position he later sought with an Army hospital in Stuttgart. He was thereafter given provisional credentials, but they were limited to work with adults. Although credentialing appeals are still pending, Siegert has been removed from the behavior therapy program and given work in an Army medical library, work he claims is in no way comparable to his previous responsibilities.

After learning of Gilley's letter to Smith, Siegert filed this action in the United States District Court for the District of Columbia alleging that Gilley's defamatory statements had deprived him of liberty without due process, a violation of his Fifth Amendment rights for which he seeks damages under the doctrine of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In addition, Siegert brought claims under the court's pendent jurisdiction. Defendant Gilley moved for dismissal or in the alternative for summary judgment based on his defense of qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The district court denied the motion to dismiss or for summary judgment on the ground that the record was insufficiently developed. The court ordered discovery limited to the taking of depositions from the parties and Col. Smith. *Siegert v. Gilley*, Civ. No. 86–3234, Order at 3, 1987 WL 27640 (D.D.C. Dec. 3, 1987). Gilley moved for reconsideration and for a stay of discovery pending resolution of his immunity claim.

On June 30, 1988, the court denied the motion to reconsider. *Siegert v. Gilley*, 692 F.Supp. 1406 (D.D.C.1988). The court only "reluctantly wrote this opinion because of counsel for the defendant's insistence that I had no right to establish a limited discovery schedule prior to issuing an opinion on the qualified immunity defense." *Id.* at 1420. The district court found that plaintiff had alleged a violation of a constitutionally protected liberty inter-

est that was clearly established in the case law at the time of defendant's conduct. *Id.* at 1418. The court concluded that "[Gilley's] qualified immunity defense therefore fails," *id.,* and that Siegert had established a proper basis for a *Bivens* claim. *Id.* at 1419.

Defendant then filed this appeal. In an order issued on January 9, 1989, we rejected Siegert's motion to dismiss for want of a final order on the ground that a denial of a claim of qualified immunity is immediately appealable (citing *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

## II. Discussion

### A. Scope of Appellate Jurisdiction

■ The first issue before us is the scope of our jurisdiction to hear this appeal. Although the parties do not argue the question, this court has a duty to raise *sua sponte* the issue of its own jurisdiction. *Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976). While it is well established that a denial of a claim of qualified immunity is immediately appealable, *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817, the parties argue not only this issue, but also the district court's finding that a *Bivens* remedy is available in this case. For the reasons that follow, we conclude that our inquiry at this time is limited to the sole question of the district court's rejection of Gilley's claim of qualified immunity.

The statute establishing the parameters of appellate jurisdiction provides as follows:

The courts of appeals ... shall have jurisdiction of appeals from all *final decisions* of the district courts of the United States....

28 U.S.C. § 1291 (emphasis added). Because the proceeding before the district court has not been terminated, this appeal may only be heard because it involves an appeal from a special càtegory of district court decisions identified by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed.

1528 (1949). That category consists of final determinations of

rights asserted in [an] action [that are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

*Id.* at 546, 69 S.Ct. at 1226. Typically, they involve rights which if not subject to immediate appeal may be lost irreparably. *Id.*

In this case, the collateral matter is the right asserted by Gilley not to be forced to trial or discovery because of his qualified immunity. In *Mitchell v. Forsyth,* 472 U.S. at 526–27, 105 S.Ct. at 2815–16, the Supreme Court recognized that the essence of a claim of qualified immunity is that the immunized party has a positive right not to be brought to trial, and that this right is effectively lost once the case proceeds to trial. *See also Minotti v. Lensink,* 798 F.2d 607, 608 (2d Cir.1986) (denial of motion to dismiss for Eleventh Amendment immunity is immediately appealable because "the essence of the immunity is the possessor's right not to be haled into court—a right that cannot be vindicated after trial").

In this respect, Gilley's claim of immunity is distinct from his other defenses. It alone can be characterized as a defense that is finally determined by the court and lost if the case goes to trial. In contrast, Gilley's claim that he committed no constitutional violation or that there is no cause of action under *Bivens* are both claims that even if decided against him by the district court can be meaningfully vindicated through the normal course of appeal and reversal. Moreover, the *Bivens* issue might never come before us if the district court finds plaintiff's claim inadequate on other grounds. We conclude, then, that the only issue now properly before us on appeal is that of Gilley's qualified immunity.

### B. Heightened Pleading Standard for *Bivens* Claims Alleging Unconstitutional Motive

In determining the validity of defendant's claim of immunity as a government

official, we begin by recognizing the recasting of qualified immunity law in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Prior to *Harlow*, the prevailing standard contained both objective and subjective elements; thus a federal official's claim of immunity would be defeated if "he *knew or reasonably should have known*" that his actions would violate an individual's constitutional rights, or if he "took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury....." *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975) (emphasis in original). The *Harlow* Court recognized that under the *Strickland* rule, one of the primary goals of the qualified or "good faith" immunity doctrine, the termination of meritless claims at the earliest possible stage of a litigation, was frustrated by the discovery required to prove the subjective element. 457 U.S. at 815–16, 102 S.Ct. at 2736–37. Therefore, the Court concluded that "bare allegations of malice [would] not suffice to subject government officials to the costs of trials or burdens of broad-ranging discovery." *Id.* at 817–18, 102 S.Ct. at 2738. Instead, to overcome the qualified immunity that ordinarily attaches to government officials performing discretionary functions, a plaintiff must show that the defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The Supreme Court has subsequently described this "reasonable person" standard as having "purged qualified immunity doctrine of its subjective components," *Mitchell v. Forsyth*, 472 U.S. 511, 517, 105 S.Ct. 2806, 2810, 86 L.Ed.2d 411 (1985), and as having "rejected inquiry into state of mind in favor of a wholly objective standard." *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984).

As we pointed out in *Halperin v. Kissinger*, 807 F.2d 180, 186–87 (D.C.Cir.1986), it is by no means clear that the Supreme Court intended this expansive language to preclude *any* inquiry into subjective motivation. Thus in *Martin v. D.C. Metro. Police Dep't*, 812 F.2d 1425 (D.C.Cir.1987),

we read *Halperin* as saying that the *purely* objective standard of inquiry was reserved for the national security context, and that otherwise

> when the governing precedent identifies the defendant's intent (unrelated to knowledge of the law) as an essential element of plaintiff's constitutional claim, the plaintiff must be afforded an opportunity to overcome an asserted immunity with an offer of proof of the defendant's alleged unconstitutional purpose.

*Id.* at 1433 (citations omitted).

Having determined that plaintiff must be afforded the opportunity to prove such allegations of unconstitutional motive, we now turn to the wholly separate inquiry into the standard of pleading required of plaintiffs in cases involving such allegations. In *Hobson v. Wilson*, 737 F.2d 1, 29–30 (D.C. Cir.1984), we first recognized the danger that plaintiffs might allege facts consistent with lawful conduct and append a claim of unconstitutional motive, thus imposing on officials the very costs and burdens of discovery and possibly trial that *Harlow* intended to spare them. *Id.* at 29. We then concluded, in *dicta*, that in claims of unconstitutional motive, plaintiffs must come forward with some "nonconclusory" allegations of evidence in order to proceed. *Id.*

In *Smith v. Nixon*, 807 F.2d 197 (D.C. Cir.1986), we adopted the *Hobson* rationale and held that damage actions against government officials are subjected to a heightened pleading standard, so that "bare allegations of improper purpose, like the bare allegations of malice rejected in *Harlow*, do not suffice to drag officials into the mire of discovery." *Id.* at 200 (citations omitted). And in *Martin v. D.C. Metro. Police Dep't*, the same case in which we recognized the need to allow offers of proof of unconstitutional motive, we nonetheless recognized that such an offer must conform to a higher standard than that generally provided for in the Federal Rules:

> Where the defendant's subjective intent is an essential component of plaintiff's claim, once defendant has moved for pre-

trial judgment based on a showing of the objective reasonableness of his actions, then plaintiff, to avert dismissal short of trial, must come forward with something more than inferential or circumstantial support for his allegation of unconstitutional motive. That is, some direct evidence that the officials' actions were improperly motivated must be produced if the case is to proceed to trial.

812 F.2d at 1435.

Most recently, in *Whitacre v. Davey*, 890 F.2d 1168 (D.C.Cir.1989), we considered a *Bivens* claim alleging age-based discrimination in violation of the Fifth Amendment. We found that the complaint, as it alleged an unconstitutional motive, had to include "nonconclusory allegations of evidence of such intent in order to survive a motion to dismiss." *Id.* at 1171 (internal quotations omitted). "If a plaintiff fails to allege direct evidence of unconstitutional intent, his claim must be dismissed immediately." *Id.* at 1171 n. 4. Thus, *Whitacre* makes clear that discovery is not to be allowed until plaintiff has alleged the existence of direct evidence of impermissible motive.

■ To summarize the applicable law: Inquiry into subjective intent unrelated to knowledge of the law is permissible where the constitutional violation turns on an unconstitutional motive. Nonetheless, under this court's heightened pleading standard, in order to obtain even limited discovery, such intent must be pleaded with specific, discernible facts or offers of proof that constitute direct as opposed to merely circumstantial evidence of the intent.

C. Application in this Case

To overcome Gilley's defense of immunity, Siegert may plead one of two types of claims. If he alleges that the action was objectively unlawful, he must plead that no reasonable official in Gilley's position "could have believed [his actions] to be lawful, in light of clearly established law...." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). In the alternative, if the alleged constitutional violation turns on some element of subjective intent, then Sie-

gert must plead the unconstitutional motivation and do so with the offer of proof required by our heightened pleading standard.

While we believe Siegert's suit is grounded in his allegations of bad faith and malice, an indulgent reading of the complaint would also find, in its reference to defamation *per se*, an allegation of a cause of action under clearly established law that is independent of the element of intent. This appears to have been the district court's reading of the complaint as the bulk of its analysis is devoted to comparing Siegert's situation with those addressed in our prior decisions in *Doe v. United States Dep't of Justice*, 753 F.2d 1092 (D.C.Cir.1985), and *Bartel v. FAA*, 725 F.2d 1403 (D.C.Cir. 1984), cases that did not involve claims of impermissible subjective intent. Adopting this reading, we nevertheless find that Siegert has failed both of the routes that lead to overcoming Gilley's official immunity in this case.

1. *Objective Legality of Gilley's Actions in Light of Pre-existing Law*

■ The Supreme Court's recent decision in *Anderson* makes clear that the constitutional right alleged to have been violated is not to be defined in such abstract terms as to make it "impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." *Id.*, 483 U.S. at 639, 107 S.Ct. at 3039 (internal quotations omitted). Rather,

the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Id.* at 640, 107 S.Ct. at 3039. While the Court noted that the very act in question need not have been held unlawful, nonetheless "in the light of pre-existing law the unlawfulness must be apparent." *Id.*

While the district court seems to have recognized this principle, 692 F.Supp. at 1412, it has misapplied the standard to the

facts of this case. The district court relied on *Doe* and *Bartel* to establish that it is a violation of a constitutionally protected liberty interest when "the government is the source of the defamatory allegations and the resulting stigma involves some tangible change of status vis-a-vis the government." *Siegert*, 692 F.Supp. at 1415 (internal quotations omitted).

Although *Doe* and *Bartel* may stand for that proposition, and although the district court attempts an analogy between this case and *Bartel*, 692 F.Supp. at 1416, the effort fails because the court's definition of the right at issue in this case was insufficiently particularized to meet the requirements of *Anderson*. *Doe* involved the discharge of a Department of Justice employee who was at the same time accused by her supervisors of unprofessional conduct and dishonesty; it did not involve, as this case does, a response by a government official to a request for information about a former employee from a prospective government employer.

This is not an insignificant difference. Common law defamation itself recognizes both that there is a qualified privilege for reports on employees to prospective employers, Smolla, Law of Defamation § 8.08[2][d], and that the privilege is more likely to be applicable when the information given is in response to a request rather than volunteered. *Id.* § 8.08[2][b]. These common law privileges carry over into our due process analysis as it is the government's involvement, through Gilley, that "transforms a [common law] defamation into a [constitutional] deprivation of liberty." *Doe*, 753 F.2d at 1108 (internal quotation and citation omitted). Even if the district court were to be found correct in its view that there is no constitutionally significant difference between terminating an employee directly amidst stigmatizing allegations and merely responding to a solicitation for a job reference, such a view cannot be said to follow ineluctably from *Doe*.

*Bartel* fares no better. While that case did involve a supervisor who, upon hearing of a former employee's attempt to gain another position, sent letters to several Federal Aviation Administration officials critical of the plaintiff, the letters were not sent in response to a request for an evaluation of a former employee. They were volunteered. In the instant case, by contrast, Gilley responded to a request for information about the employee's performance. Although there is some dispute as to whether the evaluation sought here was "subjective" or "objective," the relevant question, under *Anderson*, is not whether Gilley misunderstood the nature of the information requested, but whether the constitutional right claimed by Siegert was so clearly established that a reasonable person would have known that a candid response to such an official inquiry might give rise to liability for damages.

We conclude that while *Doe* and *Bartel* illustrate circumstances in which a government official's stigmatizing comments will violate a former employee's protected liberty interest by effecting a change in his status vis-a-vis the government, they do not "clearly establish," within the meaning of *Harlow*, that Gilley's actions amounted to such a violation.

### 2. The Heightened Pleading Standard Applied to Siegert's Claim of Unconstitutional Motive

Siegert's central contention, of course, is that defendant wrote the letter with bad faith and malice; and in light of our analysis immediately above, it represents the only basis on which he can hope to overcome Gilley's claim of privilege. We assume, without deciding, that such bad faith motivation would suffice to make Gilley's actions in writing the letter a violation of Siegert's constitutional rights, and that the process given by the credentialing review was not adequate to meet due process requirements. Nonetheless, we find that the invalidating motivation has not been pleaded with the offer of noncircumstantial proof required to satisfy our heightened pleading standard. *Cf. Whitacre*, 890 F.2d at 1171.

Siegert's allegation of malice is unsupported by any evidence beyond innuendo about "long-standing and consistent profes-

sional and personal friction between defendant and himself." Amended Complaint, para. 6. The complaint's shortcoming is most evident in its allegations that Gilley had acted in bad faith when he described Siegert as inept, unethical, and untrustworthy. *Id.* at para. 11. It merely asserts (and reasserts) that in making the statement he "knew [it] to be false or [made it] with reckless disregard as to whether it was true," *id.* at paras. 11 and 23, and that he "maliciously and in bad faith attempted to destroy ... plaintiff's ability to earn a livelihood as a clinical psychologist." *Id.* at para. 21. Nor did the affidavit submitted by Siegert in support of his Statement of Material Facts at Issue add anything more tangible to the record than the assertions that prior to the time Gilley became his supervisor, he had received exemplary job performance ratings, had never had his professional integrity questioned, and that his resistance to certain changes Gilley wished to make in St. Elizabeths' programs was the source of Gilley's hostility towards him. Affidavit of Frederick A. Siegert dated January 28, 1988, paras. 4–5.

As we emphasized in *Hobson*, "conclusory allegations" of this sort will not suffice to subject government officials to the burdens of discovery or trial. 737 F.2d at 29–30. *Hobson* itself provides an example of allegations of direct evidence of improper motivation that *will* overcome a defense of qualified immunity. In that case, it was alleged that the Federal Bureau of Investigation and District of Columbia law enforcement authorities had violated plaintiffs' First and Fifth Amendment rights pursuant to an organized plan, known as "COINTELPRO–New Left," that was "designed to conduct surveillance upon and to cause disruption of" plaintiffs' protected political activities. *Id.* at 27. The complaint referred to specific memoranda admitting that the program's express purpose was to disrupt plaintiffs' political activities. *Id.* at 10. We easily found these allegations to be "neither general, conclusory, nor devoid of factual support." *Id.* at 31.

Siegert has alleged nothing remotely comparable. His assertions are no less inferential than the factual support offered by the plaintiffs in *Martin* that we rejected as insufficient. 812 F.2d at 1434–35. In that case, which involved charges of malicious prosecution by District of Columbia police officers, the plaintiff alleged that the defendants had reviewed video tapes of newscasts showing policemen beating him with nightsticks, that the plaintiff was the only person identified and marked for prosecution as a result of that review, that the defendants had worked closely with the U.S. Attorney in deciding on his subsequent arrest and prosecution, and that an unusually large team of officers had effected his arrest. 812 F.2d at 1435. We remarked that although in the ordinary case such circumstantial evidence "might allow a plaintiff to remain in court," in light of *Harlow*, it was insufficient to override a defense of qualified immunity. While it is true that in *Martin* we allowed limited discovery, we did so only as a "one-time exception" because of the special exigencies in that case. *Whitacre*, 890 F.2d at 1171 n. 4 (citing *Bartlett v. Bowen*, 824 F.2d 1240, 1245 (D.C.Cir.1987)).

It might be argued, nevertheless, that the highly restricted discovery ordered by the district court in this case is supported by the Supreme Court's decision in *Anderson*. In a footnote to its opinion, the Court suggested that if a plaintiff alleges actions that no reasonable official could believe lawful, and the defendant in turn alleges he in fact took *different* actions that a reasonable official *could* believe lawful, then limited discovery "tailored specifically to the question of [defendant's] qualified immunity" might be necessary. 483 U.S. at 646–47 n. 6, 107 S.Ct. at 3042 n. 6. This is not the situation before us. The purpose of the inquiry ordered by the district court in this case was not to establish the factual basis for determining the objective legal reasonableness of Gilley's actions, but to inquire into their motivation. This is precisely the kind of subjective inquiry that *Harlow* found impermissible. 457 U.S. at 817, 102 S.Ct. at 2737.

### III. CONCLUSION

The requirements of our heightened pleading standard are clear. But instead

of meeting them, Siegert asks the court to infer, from his claims of personal friction, his exemplary job performance ratings before Gilley became his supervisor, and his conclusory assertion that defendant knew his statements to be false, that Gilley wrote the letter with a constitutionally impermissible intent. As Siegert has failed to offer any direct evidence that the letter was written maliciously, we see no basis for submitting Gilley to the burden of discovery.

Accordingly, we reverse the district court's denial of defendant's motion for reconsideration, vacate the court's order that the parties proceed with discovery, and remand with instructions that the case be dismissed.

*It is so ordered.*

WALD, Chief Judge, dissenting in part:

This case brings into sharp focus a dilemma created by our circuit's current jurisprudence on qualified immunity: plaintiffs are required to adhere to a "heightened pleading standard" of nonconclusory facts that demonstrate a government official's unconstitutional motive, but they are entirely restricted from obtaining through discovery the information necessary to make that showing. While I do not agree completely with the trial judge's resolution of the qualified immunity issue, I also find the majority's outright dismissal of Siegert's action unnecessary and inappropriate in the circumstances of this case. Although I too would vacate the trial judge's finding of no qualified immunity, I would allow a limited discovery, similar to that ordered by the judge, to proceed on remand to permit the plaintiff to make a showing of unconstitutional motive, if he can.

## I. The Heightened Pleading Standard

The qualified immunity defense is designed to prevent "bare allegations of malice" from subjecting government officials to the disruptions of litigation, including "the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Consistent with this instruction, this circuit has required plaintiffs challenging qualified immunity defenses to provide "some factual allegations [to] support claims of unconstitutional motive" on the part of defendant officials. *Hobson v. Wilson*, 737 F.2d 1, 30 (D.C.Cir.1984). This heightened pleading standard "bears on the degree of *factual* specificity required in plaintiff's complaint." *Martin v. Malhoyt*, 830 F.2d 237, 254 n. 41 (D.C.Cir.1987) (emphasis in original). It is applied once the defendant makes a showing of the objective legal reasonableness of his actions; at that point, plaintiffs must offer "some direct evidence that the officials' actions were improperly motivated" to avoid pre-trial dismissal. *Martin v. D.C. Metropolitan Police Dep't*, 812 F.2d 1425, 1435 (D.C.Cir. 1987).

A plaintiff who has good reason to suspect but lacks specific evidence of an official's unconstitutional motive therefore faces a threshold problem: how to gain enough information to survive the defendant's motion to dismiss or motion for summary judgment on the grounds of qualified immunity. The majority offers a straightforward answer: "If a plaintiff fails to allege direct evidence of unconstitutional intent, his claim must be dismissed immediately." Maj.Op. at 802 (citing *Whitacre v. Davey*, 890 F.2d 1168, 1171 n. 4 (D.C.Cir. 1989)). If the plaintiff cannot plead "specific, discernible facts or offers of proof that constitute direct ... evidence of the intent," he is out of court. Maj.Op. at 802.

## II. The Role of Limited Discovery

I believe that this application of the "heightened pleading standard" reflects a misguided approach to our "twin goals" of "limit[ing] the litigation burdens placed on government officials by 'insubstantial' lawsuits" and "preserving the opportunity for plaintiffs to vindicate constitutional rights." *Martin v. D.C. Police*, 812 F.2d at 1439 (Edwards, J., concurring) (citing *Hobson*). In my view, the heightened pleading standard, as originally articulated by this court, did not rule out the opportunity in

appropriate circumstances, where proof of the defendant's motive is peculiarly in the defendant's hands, for plaintiffs to examine the defendant's motive through limited discovery, directed and supervised by the trial court.

In *Hobson*, we expressly noted that "in some circumstances plaintiffs are able to paint only with a very broad and speculative brush at the pre-discovery stage, and that overly rigid application of the rule we articulate could lead to dismissal of meritorious claims." 737 F.2d at 30–31. We warned that plaintiffs who could not allege any specific facts supporting a claim of unconstitutional motive "cannot expect to involve Government actors in *protracted* discovery and trial." *Id.* at 30 (emphasis added). This comment, however, implicitly left open the possibility of some limited discovery before a final ruling on the qualified immunity claim.

In *Martin v. D.C. Police*, we vacated the district judge's dismissal of a qualified immunity defense on the grounds that she had not properly considered whether the complaint contained the factual specificity required by the heightened pleading standard. 812 F.2d at 1436. Rather than dismissing the case outright, however, we deferred a decision on qualified immunity pending limited, particularized discovery, monitored with "particular care and sensibility." *Id.* at 1437–38. *Martin* clearly indicated that "carefully circumscribed," "sharply limited" discovery ordered by the district judge is consistent both with preserving plaintiffs' constitutional rights and with enabling Government officials to avoid the rigors of "protracted" discovery. *Id.* at 1438–39 (Edwards, J., concurring); *id.* at 1437–38 (majority opinion) (noting district judge's discretion to defer decision on summary judgment motion to allow opponent of motion to pursue discovery).

In light of these precedents, I am deeply disturbed by the trend in our more recent cases, seeming to rule out categorically a trial judge's discretion to order such limited discovery, even in cases where he concludes it will be of genuine assistance and is not being pursued simply to harass the defendant. In so doing, we run the risk of applying the heightened pleading standard with needless insensitivity to both a legitimate plaintiff's plight, and to a district judge's perceptiveness in distinguishing a legitimate plaintiff from a frivolous one. In *Martin v. Malhoyt*, the panel reversed the district court's limited discovery order on the grounds that the plaintiffs had not made out even a *prima facie* showing of their claim that the defendant police official had countenanced a pattern of illegal police activity. 830 F.2d at 257. More recently, in *Whitacre v. Davey*, another panel said that the "degree of specificity needed to make out a Title VII or statutory age discrimination *prima facie* case" did not meet the heightened pleading standard "when the constitutional tort alleged is of the same discrimination genre covered by the antidiscrimination statute." 890 F.2d at 1171. Since the Title VII *prima facie* case is "composed of only circumstantial evidence, and not overwhelming circumstantial evidence at that," it does not meet the "constitutional" heightened pleading standard applied in qualified immunity cases. *Id.* at 1171. And, additionally, absent a plaintiff's allegation of direct evidence of unconstitutional intent, "his claim must be dismissed immediately," that is, without even limited discovery. *Id.* at 1171 n. 4.

This policy of requiring specific, direct evidence of the defendant's unconstitutional intent, when unflinchingly applied to all cases in which a qualified immunity defense is raised, effectively cuts off both bona fide and ill-motivated suits. It blocks a judicial remedy to all plaintiffs who do not have access to the information they need to meet the heightened pleading standard, regardless of their ability to obtain such information without discovery. It is worth remembering that our heightened pleading standard has not as yet even been explicitly approved by the Supreme Court. Without limited discovery, many plaintiffs such as Siegert have no means of obtaining any direct evidence about a defendant supervisor's motive; such evidence, if it exists, most likely is buried in bureaucratic files. By denying even the most circum-

scribed judicially supervised factfinding into unconstitutional motive, we enable defendants who alone possess that crucial information to hide behind an unmerited shield of qualified immunity. Narrowly tailored discovery, controlled in scope and duration by a trial judge sensitive to the problems of exposing officials to disruptive litigation, on the other hand, allows worthy plaintiffs to mount reasonable challenges to otherwise impenetrable qualified immunity defenses.

Rather than being compelled to require plaintiffs independently to marshal the direct evidence of unconstitutional motive that is often peculiarly in the defendant's possession, the trial judge should be permitted to retain discretion to authorize circumscribed factfinding for plaintiffs who initially indicate with some plausible evidentiary basis why the defendant's immunity claim will fail. A pleading standard focusing on the likely success of the plaintiff's complaint, rather than the quantity of factual evidence it adduces, would better accommodate both our articulated concerns about the speculative nature of pre-discovery pleadings, *Hobson*, 737 F.2d at 31, and our desire to maintain intact trial judges' "large authority to exercise control over discovery," *Martin v. D.C. Police*, 812 F.2d at 1437. In any event, requiring plaintiffs to "come forward with something more than inferential or circumstantial support for [their] allegation[s] of unconstitutional motive," *id.* at 1435, does not preclude a judge's use of limited discovery to enable a plaintiff to supplement his originally, perhaps necessarily, sketchy complaint.

Such limited discovery is, moreover, fully consistent with the Supreme Court's concern that eligible government officials be immunized from "broad-ranging discovery." *Harlow*, 457 U.S. at 817, 102 S.Ct. at 2737. As a first step in considering a defendant's liability, *Harlow* instructed the trial judge to determine "whether [currently applicable] law was clearly established at the time an action occurred." 457 U.S. at 818, 102 S.Ct. at 2738. "Until this threshold immunity question is resolved," the Court stated, "discovery

should not be allowed." *Id.* If the law delineating the official's duty was not clearly established at the time of the alleged violation, the official cannot be held liable for failure to act in the objectively reasonable manner required by *Harlow*. But if the law on which liability is based on clearly established at the time of the alleged violation, "*this* threshold immunity question" (emphasis added) does not end the inquiry. Then, the precise nature of the defendant's alleged violation—for example, whether the defendant acted with a constitutional or unconstitutional motive—is placed squarely in issue in the qualified immunity determination. As a result, discovery "tailored specifically to the question of [the defendant's] qualified immunity" "may be necessary" before the trial judge can rule on the defendant's summary judgment motion. *Anderson v. Creighton*, 483 U.S. 635, 646–47 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987).

As I read the Supreme Court's directives, once the trial judge determines that the plaintiff has asserted a clearly established right, some discovery may well be appropriate before the judge rules on the qualified immunity defense. The majority's approach, however, slams shut this window for discovery through its unyielding application of the heightened pleading standard requiring direct proof of unconstitutional motives up front in the initial pleadings. Failure to provide any leeway for plaintiffs or trial judges, regardless of circumstances, to obtain evidence of illegal motives through limited discovery controlled by the trial judge is, in my view, not only unfair but unjustified by existing Supreme Court precedent.

### III. APPLICATIONS TO THIS CASE

The trial judge here did not complete the prescribed qualified immunity analysis. He correctly determined that Siegert's right to a good faith evaluation by his supervisor was clearly established at the time, but he appears not to have considered whether Siegert's factual pleadings of Gilley's malicious motives met the heightened pleading standard. Consequently, his find-

ing that Gilley's qualified immunity defense fails, *Siegert v. Gilley*, 692 F.Supp. 1406, 1418 (D.D.C.1988), must be vacated.

I believe, however, that Siegert's pleadings contained the necessary specificity to warrant limited discovery before a judicial resolution of the qualified immunity issue. Siegert's Affidavit states that Gilley had embarked on a course of making Siegert's professional life at St. Elizabeths Hospital unpleasant because he resented Siegert's lengthy medical leave and Siegert's resistance to Gilley's attempts to alter St. Elizabeths Hospital's behavior modification program. Affidavit of Frederick A. Siegert ("Siegert Affidavit") ¶¶ 4, 6, Joint Appendix ("J.A.") at 25. A reading of the Affidavit, together with Siegert's Amended Complaint, J.A. at 6, leaves little doubt that Siegert is claiming that because Gilley harbored these resentments, he maliciously wrote a highly derogatory reference letter. However inartfully, Siegert has done more than merely allege malice; he has provided some evidentiary basis for his contention that Gilley's motives were malicious and, by extension, unconstitutional. He has demonstrated with some plausibility that armed with sufficient evidence, he might defeat Gilley's claim to qualified immunity. Other circumstances set out in the pleadings lend some support to his theory: Siegert's history of excellent ratings until Gilley became his supervisor, Siegert Affidavit ¶ 5, J.A. at 25, and the extreme language of the evaluation itself, Amended Complaint ¶ 11, J.A. at 8, which inherently casts doubt on the author's neutrality. The trial judge certainly had some basis for permitting a limited inquiry into motive.

Accordingly, I believe that a remand with instructions to allow Siegert limited discovery—indeed, discovery much along the lines that the trial judge already ordered, albeit for a merits determination—would be in order. If such circumscribed discovery, directed solely to Gilley's motives, were productive, Siegert could then amend his complaint to conform to the heightened pleading requirement. Without such an opportunity, I believe that Siegert has been denied the opportunity to vindicate his constitutional rights. I therefore respectfully dissent from the majority's outright dismissal of his case.