**Joe LUCIO, Plaintiff,**

v.

**Clayton YEUTTER, et al., Defendants.**

**Civ. A. No. 90–2071.**

United States District Court,
District of Columbia.

Aug. 27, 1992.

---

**40**

Christopher Hornig, Reno, Cavanaugh & Hornig, Washington, D.C., for plaintiff.

Michael Ambrosino, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This case concerns a far ranging Department of Agriculture entitlement program that paid farmers to leave dairy farming for five years. Specifically, plaintiff seeks to recover payment for 64 cows which he purchased as replacements for heifers that he sold before the program regulations were published.[1] Before this Court are Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, With Respect to Claims in Plaintiff's Amended Complaint Against Defendants Individually; Plaintiff's Motion for Partial Summary Judgment; and Defendant's Motion for Summary Judgment. For the reasons that follow, we dismiss the claims against the individual defendants; grant Plaintiff's Motion for Partial Summary Judgment; and grant Defendants' Motion for Summary Judgment as to any constitutional violations.

### I. Background

Congress passed the Dairy Termination Program ("DTP") as part of the Food Security Act of 1985. Pub.L. No. 99–198, 99 Stat. 1354 (1985). The DTP goal was to permanently reduce the amount of commercially marketed milk. The DTP provided payments to farmers who agreed to destroy their herd and leave the dairy business for five years. *See* 7 U.S.C. § 1446(d)(3)(A). The program was administered by the Commodity Credit Corporation ("CCC") through the Agricultural Stabilization and Conservation Service ("ASCS") State and County Committees. *See* 7 C.F.R. § 1430.451(a). Under the program, dairy producers prepared a bid that they would accept per hundred weight of milk. The amount of reimbursement was calculated by multiplying the prior milk production base by the bid per hundred weight. The producer's preliminary base was calculated according to the lesser of the total quantities of milk commercially marketed for the two twelve-month periods ending June 30, 1985 and December 31, 1985. 7 C.F.R. § 1430.455(a). The regulations also provided that the preliminary base was to be reduced by 20,000 lbs. for each head of dairy cattle transferred from the herd between January 1, 1986 and the producer's bid date. 7 C.F.R. § 1430.455(c)(1).

---

**1.** Before learning of the program, plaintiff sold 294 heifers on January 16, 1986. In order to avoid the penalty adjustment of 20,000 pounds per head imposed for cattle transferred between January 1, 1986 and plaintiff's bid to participate of March 5, 1986, plaintiff purchased 264 heifers on March 3 and 4, 1986. Defendants have given plaintiff credit for purchasing 200 heifers.

Plaintiff Joe Lucio, a dairy farmer in Pala, California, attended an informational meeting in Chino, California on February 20, 1986 at which a representative of ASCS met with area farmers to explain the DTP.[2] It is Lucio's recollection that several farmers asked what they should do if they had sold cattle after January 1, 1986 and the same cattle were not available for repurchase. Mr. Lucio understood the representative to say that they should try to repurchase the same cattle, but if not possible, to repurchase cattle of the *same kind* and *quality*. Plaintiff's Statement of Material Facts As to Which There is No Genuine Issue ("Pl.'s Facts") ¶ 10. On March 3 and 4, 1986, Lucio says he purchased 264 cattle to replace the 294 he had sold to a cattle broker in January 1986.[3]

On March 5, 1986, Lucio submitted his application. On the same date, he also appealed to the San Diego County Committee for relief from the regulation which restricted buyback to the identical cows. The appeal letter mistakenly indicated that he purchased 200 cows to replace the 294 cows he had sold. USDA Administrative Record ("AR") at 172. His participation in DTP was conditional on the outcome of the appeal: if his appeal was granted, he was required to participate, but if it was not, Lucio had the option of withdrawing his participation or participating in accord with the appeal determination. AR at 171. Lucio's application was approved on March 10, 1986. His preliminary base was approved for 12,819,659 pounds at a bid price of $14.80 per hundred weight. AR at 1. On March 10, 1986, the ASCS Committee met to review the application and documentation. Both the County and State Committees recommended that Lucio be allowed to include the replacement cattle in his base.[4] AR at 169–170. On July 1, 1986, Defendant Thomas Von Garlem, acting as the Assistant Deputy Administrator, State and County Operations ("DASCO"), approved plaintiff's participation in DTP with respect to the repurchased heifers. However, he only credited Lucio with 200 heifers.[5]

There then followed several months of correspondence between plaintiff and the ASCS. On July 7, 1986 the ASCS County Executive Director for San Diego sent plaintiff a letter telling him that his preliminary base would be reduced by the 94 heifers sold and not repurchased. On July 9, 1986, Lucio wrote to DASCO explaining that he had actually purchased 264 cattle and not 200 and submitting documentation. AR at 159. On July 28, 1986, plaintiff received a letter from Von Garlem denying payment for *any* of the 264 cows. AR at 156. The letter indicated that the additional information Lucio provided raised additional questions,[6] and indicated that Lucio could request reconsideration within 15 days. Plaintiff requested a reconsideration on August 3, 1986 and submitted an explanation and certified statements on August 8, 1986 that indicated he had purchased 264 cattle. On August 19, 1986, a telephone hearing was held.[7] On August 22, 1986,

2. Final rules and regulations for the program were not published in the Federal Register until March 7, 1986. They were effective retroactively on February 10, 1986. *See* 51 Fed.Reg. 7,913.

3. He purchased 264 cattle and not 294 because he erroneously understood the replacement requirement to refer to total weight, not number of animals.

4. The letter from the County Committee indicated that Lucio "did repurchase the same number of head that he previously sold on January 16, 1986." AR at 170. The State Committee's letter indicated that Lucio had repurchased 200 cows. AR at 169.

5. The difference between 264 and 200 is the meat of this case. Plaintiff claims that the 200 figure was the result of a clerical mistake made in a document prepared by Greg Tonkinson on March 5, 1986. Pl.'s Facts ¶ 19; AR at 33, 172. Plaintiff says that he signed the forms because he thought the relevant quality was weight, not quantity. Defendants claim that plaintiff put the error there himself.

6. The letter indicated that some of the receipts appeared to be altered from the original submissions; that the brand inspections only covered 200 head; that one of the scale tickets was not furnished originally; and that a scale ticket appeared to refer to cattle sold to Bob Hills and not to Lucio. AR at 156.

7. The only record of such hearing is a page of handwritten notes by Maurice Reddick, a DASCO hearing officer. Pl.'s Facts ¶ 26; AR at 126.

plaintiff's business consultant submitted additional information. AR at 124. On September 28, 1986, Von Garlem responded to Lucio's appeal. He reinstated Lucio's eligibility for payment for 200 of the cows, but denied it for the other 64. In addition, the letter stated:

> Information furnished by you at various times is both inconsistent and questionable. It is highly unlikely that such can be satisfactorily resolved without a formal investigation by the USDA Office of the Inspector General.

AR at 123. In a letter of January 5, 1987, plaintiff suggested that the Office of the Inspector General ("OIG") conduct an investigation, AR at 118, and on March 4, 1987, plaintiff went further and requested a formal investigation. AR 110–111. DASCO declined to join in the request for investigation, indicating that Lucio "provided no significantly new information that was not already contained in the file and considered in our determination of September 26, 1986." AR at 63. On December 22, 1987, the ASCS County Committee sent a memo to the State Committee indicating that they would like to recommend that the State Committee grant relief for all 264 head purchased. On April 27, 1988, Lucio requested an investigation from the OIG.

The OIG conducted an investigation and issued a formal report. The report concluded that Lucio had purchased the 64 additional heifers, and indicated that Greg Tonkinson, a county employee, had altered one of plaintiff's receipts. AR at 34. On February 9, 1989, defendant Earle Bedenbaugh, DASCO, told OIG regional director Floyd Cotton that there was nothing in the report to warrant additional relief. AR at 23. Cotton's response of April 17, 1989 indicated that "there is no evidence that Joe Lucio altered any of the sales receipts, trucking receipts or weight tickets." AR at 18–19. The letter also recommended that the agency thoroughly review the matter "to assure that Mr. Lucio is not unfairly penalized due to errors propounded by

ASCS." *Id.* On May 24, 1989, the agency wrote to Lucio, again denying relief and indicating that there was no significantly new information that would warrant a change in the September 26, 1986 determination. AR at 6.

Plaintiff then filed this suit seeking DTP participation in the amount of $189,440 for the 64 cows.[8] Plaintiff seeks declaratory judgment and an order remanding the case to the Secretary with instructions to permit full participation in the program and a trial and damages on his constitutional claim. Plaintiff seeks judicial review under section 706(2) of the Administrative Procedure Act (APA). He claims that the Secretary's action must be set aside as an action taken arbitrarily and capriciously, in violation of law, and as an abuse of discretion.

Specifically, plaintiff claims that the Secretary violated ASCS procedures for conducting appeals. He claims that DASCO failed to order an investigation by OIG even though DASCO itself indicated that the dispute could not be satisfactorily resolved without a formal investigation. He argues that ASCS did not prepare a written record containing a clear, concise statement of material facts as required by 7 C.F.R. § 780.8(b). Finally, plaintiff claims that DASCO failed to allow plaintiff to correct errors in forms although such correction is permitted by the DTP handbook. Plaintiff also alleges that the Secretary violated the Fifth Amendment by denying his right to due process and that the agency's action constitutes a taking without compensation.

Defendants argue that this case is unreviewable because the agency's actions were equitable and not committed to its discretion under law.

Lucio has sued the Secretary of the Department of Agriculture, Clayton Yeutter, in his official capacities; Earle Bedenbaugh, the DASCO for the ASCS, in his official and individual capacities; and Thomas Von Garlem, the Assistant DASCO, in his official and individual capacities.

---

**8.** This figure represents the amount of money plaintiff would have been paid if the 64 cows were included in his preliminary base. For each of the 64 cows, his base was reduced by 20,000 pounds, and his total payment was thus reduced by his bid price of $14.80 per hundred pounds: $(64 \times 20{,}000)/100 \times \$14.80 = \$189{,}440$.

## II. *Procedural Claims*

This Court has jurisdiction under 28 U.S.C. § 1331 to review the Secretary's final decision. *See Esch v. Yeutter*, 876 F.2d 976, 985 (D.C.Cir.1989); *Vandervelde v. Yeutter*, 774 F.Supp. 645, 648–649 (D.D.C. 1991).

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate when there are no genuine issues of material fact. Summary judgment is especially appropriate in cases such as this where the Court is called on to review a decision of an administrative agency. In these cases, which are numerous, what is often at issue are not the facts, but whether the agency erred in applying the law. *See, e.g.,* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2733 at 366–67 (2d ed. 1983). The standards to be applied are well settled. Decisions of administrative agencies are subject to review in federal court under a standard that examines whether the decision was arbitrary and capricious. *See Motor Vehicles Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983); Administrative Procedure Act, 5 U.S.C. § 706(2). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." 463 U.S. at 43, 103 S.Ct. at 2866. A *de novo* review of the facts underlying the decision is not appropriate although the court must " 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Motor Vehicles*, 463 U.S. at 43, 103 S.Ct. at 2866–67 (quoting *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)); *Cooperative Services, Inc. v. United States Department of Housing & Urban Development*, 562 F.2d 1292, 1295 (D.C.Cir. 1977). The agency's interpretation of its own regulation is subject to a great deal of deference. *See United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *Transcanada Pipelines Ltd. v. Federal Energy Regulatory Comm'n*, 878 F.2d 401, 411 (D.C.Cir.1989); *Stuart–James Co. v. Securities & Exchange Commission*, 857 F.2d 796, 800 (D.C.Cir.1988), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1002 (1989).

It is also well established that an agency must follow its own regulations. The ASCS decisions in this and other cases are subject to a three-tier review process, with a hearing and a *de novo* determination at each level. 7 C.F.R. Part 780 sets out the appeal process for programs administered by ASCS including the DTP. *See* 7 C.F.R. § 1430.466. A participant can request that the County Committee reconsider its initial determination and obtain an informal hearing of the County Committee's initial determination if the participant believes that the determination was not made in accord with the applicable regulations or that all of the facts were not considered. Upon reconsideration, the participant can obtain a review of the County Committee's determination by filing a written appeal with the State Committee and can ask for a reconsideration of the State Committee's decision. If still unsatisfied, a participant can seek review from DASCO. The hearing shall be conducted in the manner determined by CCC or ASCS "to most likely obtain the facts relevant to the matter at issue." 7 C.F.R. § 780.9(b). All documents are to be made available to the participant upon request. 7 C.F.R. § 780.9(c). A "clear, concise statement of the facts as asserted by the participant and material facts found by the reviewing authority" is to be prepared before the hearing by the reviewing authority. *Id.* at § 780.9(d). The participant must be notified in writing of the agency's determination and such notification "shall clearly set forth the basis for the determination." *Id.* at § 780.17(a). With these principles in mind, we turn to the case before us.

It is clear that the agency failed miserably in following its procedural appeal requirements. Specifically, the agency failed to employ the means "most likely to obtain the facts relevant to the matter at issue". DASCO indicated that the facts could not

"satisfactorily be resolved without a formal investigation by the USDA Office of Inspector General" [9] and yet the agency did not request one, even after plaintiff himself requested it. Further, DASCO neither prepared a formal statement of issues, nor a written record containing a clear, concise statement of material facts as required by 7 C.F.R. 780.9(d).

Although plaintiff and the County and State Committees appear to believe that DASCO had approved plaintiff's use of replacement cattle in his base and the only question was how many cattle were actually purchased, *see* Plaintiff Lucio's Summary Judgment Ex. C, DASCO now seems to be arguing that there was no such agreement and the allowance of 200 cattle was purely discretionary. DASCO contends that whether or not plaintiff actually purchased the other 64 is immaterial. *See, e.g.*, Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of Defendants' Cross Motion for Summary Judgment at 15. The lack of a formal statement of facts and issues hinders the Court's review process and illustrates why such a procedural requirement is necessary.

After the OIG and the County Committee determined that plaintiff had actually purchased 264 heifers, and not 200, DASCO refused to acknowledge those findings with anything more than a comment that the report did not provide any significant new information. Plaintiff was never allowed to remedy his forms to indicate the correct number of cows that he purchased. DASCO never interviewed any potential witnesses. The agency never responded to plaintiff's clarifications of the "inconsistencies" or "questions" that the agency indicated had been raised. DASCO even intimated that plaintiff had acted fraudulently and threatened a formal investigation, but when the investigation cleared plaintiff, the agency refused to respond.

Defendants argue that the matter is unreviewable, because the Secretary's decision to grant plaintiff partial relief by giving him credit for 200 cows purchased after January 1, 1986 was equitable in nature, and was committed to agency discretion by law. This argument cannot stand. Although the contours of the program were left to the agency to determine, it cannot be that the agency was given unfettered discretion to arbitrarily choose an amount of compensation after the contract was signed. This is not what discretionary means. An equitable decision must be grounded on a reasonable basis.[10] As our Court of Appeals noted in a slightly different posture [11] in *Esch v. Yeutter*, "the validity of the procedures utilized in reaching a determination, including the consistency of those procedures with agency regulations, are open to judicial exploration." 876 F.2d 976, 991 (D.C.Cir.1989) (citations omitted). DASCO is not free to grant any relief it wants based purely on the whim and caprice of the agent. If it decides to permit the repurchase of cows due to the farmer's misunderstanding of the regulation, it must then take into account the cows that were actually repurchased.

Defendants contend that the decision of "Von Garlem and Bedenbaugh was completely discretionary." *See* Defendants' Motion to Dismiss at 15. We disagree. The agency is authorized pursuant to 7 C.F.R. § 1430.467 and 7 C.F.R. § 790.2 to grant permissive relief to provide fair and equitable treatment. The agency is also permitted to develop informal policies to respond to unexpected aspects of the program administration. However, this does not mean that the agency is free to dis-

---

9. AR at 122.

10. *Cf. Golightly v. Yeutter*, 780 F.Supp. 672 (D.Ariz.1991) (Agency's discretionary power permitted by 7 U.S.C. § 1444–1(h)(1) is reviewable as discretion "is circumscribed by the requirement that some reasonable basis be shown" for discrimination between similarly situated parties).

11. The defendants in *Esch* had argued that 7 U.S.C. § 1385 precluded judicial review because it provided that the "facts constituting the basis" for any payment under a program, "or the amount thereof, when officially determined in conformity with the applicable regulations" were final and unreviewable. The Circuit Court held that the statute did not preclude review of the procedures followed. 876 F.2d at 991.

regard its appeal and review process or to dispense money at whim. The regulations provide a series of procedural protections to assure that the decisions made are founded on fact and that the farmers have an adequate means to present and to protect their interests. Although the agency did not have to permit Lucio to purchase different cows, once it did,[12] it was bound to be consistent and compensate him for all of the cows which plaintiff purchased. The agency suggested that plaintiff was trying to defraud the government and that only an investigation by the OIG would clarify "the truth"; when plaintiff requested such an investigation, the agency chose to disregard his vindication. The agency here was slapdash in its review of plaintiff's claims and disregarded findings by the OIG. It is not clear that there ever was a serious examination of plaintiff's claims nor a statement of facts. Defendants cannot now hide behind an argument that any relief was completely discretionary.

■ In this case, the agency disregarded its own appeal regulations, and after two investigations cleared plaintiff of any wrongdoing and found that he had in fact repurchased 264 heifers, the agency continued to maintain—against all evidence—that he only repurchased 200 heifers. Accordingly, we have no problem in finding that the agency's determination is arbitrary and capricious and unsupported by the evidence. Therefore we remand to the agency for reconsideration in light of the results of the OIG investigation.

### III. *Constitutional Arguments*

■ Plaintiff also claims that defendants breached his Fifth Amendment rights by taking property from citizens without adequate compensation and due process of law. We do not believe that the obvious flaws in the administrative review process which we have previously pointed out rise to the level of a constitutional violation.

In any case, it is well settled that a court should avoid addressing constitutional issues if there is some other way of resolving the dispute. In this case, since we have found that the agency's procedural deficiencies have produced an arbitrary and capricious result, we are satisfied that plaintiff's complaint about lack of due process should and will be adequately redressed by the reconsideration of the issue by the agency.[13]

Accordingly, we grant defendant's motion for summary judgment in this regard.

### IV. *Motion to Dismiss Claims against Individual Defendants*

Defendants have moved to dismiss the claims against Earle Bedenbaugh and Thomas Von Garlem in their individual capacities. Because we find that plaintiff failed to meet the heightened pleading standard and because these defendants have a qualified immunity from suit, we grant defendants' motion.

■ Qualified immunity from suit ordinarily attaches to government officials performing discretionary functions. *Siegert v. Gilley*, 895 F.2d 797, 801 (D.C.Cir.1990), *aff'd* — U.S. —, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). If they are immunized from suit, they have a "positive right" not to be forced to trial. *Siegert*, 895 F.2d at

---

**12.** Although defendants now allege that they never agreed to permit plaintiff to include in this base whatever number of cattle he replaced, the Administrative Record suggests otherwise. The memo from Von Garlem to the State Committee permitting it to accept a contract with Lucio on July 1, 1986 states:

> The DTP contract for Joe Lucio Dairy may be accepted for $14.80 for the first disposal period provided the producer is agreeable to participating with a contract base of 10,939,659 pounds or 109,396.59 hundredweights. This contract base was computed by taking the preliminary base of 12,819,659 pounds and

subtracting from it, the 1,880,000 pound adjustment for the 94 heifers sold and not offset by purchases.

AR at 162. *See also* AR at 122 (letter of September 25, 1986 from Von Garlem to Lucio) ("you were authorized to participate in the DTP providing your contract base was decreased to reflect 94 heifers sold and not offset by purchases").

**13.** *Cf. Doty v. United States*, 24 Cl.Ct. 615 (1991) (Claims Court declines to reach due process violation by ASCS as remand to agency would adequately address complaint).

800; *Mitchell v. Forsyth,* 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). To overcome the immunity, a plaintiff must show "that the defendant violated 'clearly established statutory or constitutional rights of which a reasonable person would have known'", *Siegert,* 895 F.2d at 801 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Furthermore, the plaintiff must plead that no reasonable official in the position of the defendants could have believed their actions to be lawful, in light of clearly established law. *Siegert,* 895 F.2d at 802; *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–3040. Plaintiff has failed to sufficiently plead in order to survive a qualified immunity challenge.[14]

■ Plaintiff has not shown that the individual defendants violated any clearly established right. Lucio contends that once the OIG found that he had actually repurchased 264 cattle and not just 200, the refusal of Bedenbaugh and Von Garlem to compensate plaintiff for those 64 cattle amounted to a constitutional violation. But there is no statute or regulation which entitles farmers to purchase different cattle to substitute cattle mistakenly sold after January 1, 1986 in the DTP program. Plaintiff has not shown that no reasonable official in defendants' position could have believed that the decision to permit plaintiff to repurchase 200 different cattle and not 264 was lawful. Nor are we aware of any statute or regulation that requires DASCO to accept the findings of the OIG

where relevant. Accordingly, since the officials hold a qualified immunity in their individual capacity from this type of suit, we grant defendants' motion to dismiss them from the case.

We remand to the agency for a new determination in accord with this opinion. The agency agreed to allow Lucio to include repurchased cattle in his base. As the OIG found that the Lucio actually purchased 264 cows and not 200, DASCO should have little trouble in granting plaintiff participation for his full complement of cows. All further proceedings shall be conducted in accordance with the DTP statute, 7 U.S.C. § 1446(d) and regulations, 7 C.F.R. § 1430.450 *et seq* in accord with the ASCS appeal regulations, 7 C.F.R. Part 780. Specific findings of fact should be made concerning the number of heifers plaintiff purchased as replacement for cattle sold on January 16, 1986 prior to March 5, 1986, and plaintiff's applicable base shall be adjusted accordingly.

An Order consistent with the foregoing is entered this day.

### ORDER

In accordance with the Memorandum Opinion filed this day, it is by the Court, this 27th day of August, 1992, hereby

ORDERED that Plaintiff's Motion for Partial Summary Judgment is granted; and it is

ORDERED that any claims against defendants Earle Bedenbaugh and Thomas Von Garlem in their individual capacities are dismissed; and it is

ORDERED that all claims alleging constitutional violations are dismissed; and it is

FURTHER ORDERED that this matter is remanded to the Deputy Administrator,

---

**14.** It is well established that for a plaintiff to bring charges of constitutional violation against employees of the government, the complaint must meet a heightened pleading standard, which articulates a "violation of clearly established law." *See Martin v. Malhoyt,* 830 F.2d 237 (D.C.Cir.1987); *Siegert v. Gilley,* 895 F.2d 797, 804 (D.C.Cir.1990), *aff'd* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Plaintiff would have had to plead that a reasonable person would have known that there existed an informal policy to allow recapture of base for different cattle and that a decision contrary to such a policy would have violated a clearly established right. *Mitchell,* 472 U.S. at 535, 105 S.Ct. at 2820. The plaintiff has failed to articulate such a violation.

State and County Operations for further proceedings in accordance with the accompanying Memorandum Opinion; and it is

FURTHER ORDERED that this case is dismissed, with prejudice.